UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL MELENDEZ, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:25-cv-00597-LEW |
| | ) | |
| TARGET STORES, INC., | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON MOTION TO SUPPLEMENT COMPLAINT**

Plaintiff moves for leave to supplement his complaint, seeking to add multiple claims and to join several additional defendants, including defense counsel, one of counsel's law partners, and counsel's law firm. (collectively, defense counsel). (Motion, ECF No. 17; First Amended Complaint, ECF No. 17-1.) Defense counsel opposes the motion. (Def. Counsel's Opp., ECF No. 24.) Defendant Target also opposes the motion. (Target's Opp., ECF No. 25.)

Following a review of the record and after consideration of the parties' arguments, I recommend that the Court deny the motion.

**BACKGROUND**

In his original complaint dated September 25, 2025, which complaint Plaintiff filed in state court, Plaintiff claimed that he was assaulted and defamed by Defendant Target while he was buying luggage at a self-checkout register at a Target Store in Virginia. In November 2025, Defendant Target removed this action to this Court under 28 U.S.C. § 1446, invoking this Court's diversity jurisdiction. After Defendant Target answered the

complaint, the Court issued a scheduling order setting a deadline of February 19, 2026 for amendment of the pleadings and joinder of parties, and a deadline of April 23, 2026 for the completion of discovery.

In June 2026, Plaintiff filed the motion for leave to supplement his complaint and a proposed amended complaint. In that proposed pleading, Plaintiff asserts claims against defense counsel and John Doe, a partner or employee of Defendant Target, related to the conduct of discovery in this matter. Plaintiff asserts claims of abuse of process, appropriation of likeness, and intentional infliction of emotional distress (IIED) based on a video recording produced by Defendant Target in discovery and Defendant Target's discovery request for certain information regarding Plaintiff's minor children, who were present during the alleged self-checkout incident. Plaintiff alleges that John Doe provided defense counsel "with a video of events that never occurred," (Proposed First Amended Complaint ¶ 35, ECF No. 17-1), and that defense counsel failed to take reasonable steps to verify the authenticity of the video. Plaintiff alleges that the "fabricated video" appropriates his likeness without his consent and that the use of the video against him in this case has caused him emotional distress. Plaintiff further claims that Defendant Target and the other proposed defendants appropriated the likeness of his children without his consent and used that likeness in an effort to coerce him into making false statements about the case, causing him to suffer severe emotional distress. (*Id.* ¶ 60.) Plaintiff also alleges that John Doe and defense counsel attempted to intimidate him into withdrawing the case by seeking to discover the birth dates and the location of his minor children.

## LEGAL STANDARD

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Under Rule 15(d), the filing of a supplemental pleading is not available to the pleader as a matter of right but, rather, is subject to the court's discretion." *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015). Leave to supplement may be denied if the pleading as supplemented would be futile or if it would unduly prejudice opposing parties. *Id.* at 7.

In this context, "futility" means that the complaint, as supplemented, "would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). When "reviewing for 'futility,' the district court applies the same standard of legal sufficiency" as applies to a motion under Federal Rule of Civil Procedure 12(b)(6). *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating plausibility, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The Court does not, however, credit legal conclusions or recitals of the elements of a cause of action supported only by conclusory statements. *Iqbal*, 556 U.S. 678.

## DISCUSSION

Defendant Target and defense counsel raise multiple challenges to the legal sufficiency of the proposed supplemental claims. Among other things, they argue that the supplemental claims are barred by the litigation privilege, and that the supplemental claims lack facial plausibility.

### A. Litigation Privilege

Maine law has long recognized an absolute privilege, or immunity from suit, for allegations made by parties in pleadings, the testimony of witnesses, and statements made by counsel during the course of a judicial proceeding.[1] *See Bradbury v. GMAC Mortg., LLC*, 58 A.3d 1054, 1056-57 (Me. 2012); *Dineen v. Daughan*, 381 A.2d 663, 664 (Me. 1978). "For the privilege to function as intended, the statements it protects must be relevant to the judicial proceeding. The purpose of the privilege is to allow the attorney to litigate strenuously the interests of his client." *Dineen*, 381 A.2d at 665. "The privilege has its origins in the common law of libel and slander, but it has been expanded to other torts." *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023-GZS, 2014 WL 4843809, at *9 (D. Me.

[1] In their arguments, the parties assume that Maine law supplies the rule of decision with respect to the litigation privilege. That is, the parties cite Maine law in support of their respective positions. Because the events relevant to Plaintiff's claim occurred in Virginia, it is not entirely clear that Maine law would supply the substantive rules of decision. *See Hall v. Delta Air Lines, Inc.*, No. 2:16-cv-00417-JAW, 2018 WL 1570788, at *20-21 (D. Me. Mar. 30, 2018) (acknowledging that "federal courts sitting in diversity follow the forum state's choice of law rules" and discussing the "most significant contacts and relationships" set out in the Restatement (Second) of Conflict of Laws, followed by courts in Maine). A court may, however, "forgo independent choice of law analysis and accept the parties' agreement" regardless of whether their choice of law is correct. *Shay v. Walters*, 702 F.3d 76, 79-80 (1st Cir. 2012) (quotation marks and alteration omitted); *see also Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011) (collecting case law). Here, where the choice-of-law issue has not been briefed, and given the parties' apparent agreement that Maine law governs, it is appropriate to assess the issue under Maine law.

Sept. 29, 2014) (collecting case law). As such, where the litigation privilege applies, it bars not only a claim sounding in defamation, but other tort claims based on the protected communications. *See Creamer v. Danks*, 863 F.2d 1037 (1st Cir. 1988) (applying Maine law and concluding that the litigation privilege barred not only plaintiffs' defamation claim, but all the claims against defendant, including negligence for professional malpractice); *see also LaPlante v. UPS, Inc.*, 810 F. Supp. 19, 21 (D. Me. 1993) (concluding UPS response to an investigator's report was absolutely privileged and response could not be a basis for civil liability under Title VII of the Civil Rights Act).

Here, the supplemental claims against defense counsel are barred by the litigation privilege because the claims are based on communications that were sent during and are relevant to this litigation. Defense counsel's discovery request for information regarding Plaintiff's children was relevant to the litigation, as Plaintiff's children were present, and allegedly in Plaintiff's shopping cart, during the self-checkout incident that gave rise to this action. The video recording of the self-checkout incident provided to Plaintiff by Defendant Target, John Doe, and defense counsel is also plainly a communication relevant to the proceeding.

As noted above, the litigation privilege is designed to facilitate counsel's ability "to litigate strenuously the interests" of counsel's client. *Dineen*, 381 A.2d at 665. The privilege extends beyond communications in the courtroom, Anthony Moffa & Berman, Simmons, P.A. & Alicia Curtis, Maine Tort Law § 21.10 (LexisNexis Matthew Bender 2026), and it bars the supplemental tort claims that Plaintiff seeks to assert as the alleged conduct in the proposed amended complaint is within the scope of the privilege.

## B. Plausibility of the Supplemental Claims

Defendant Target and defense counsel also contend that even if the litigation privilege did not bar the supplemental claims, the motion should be denied because the supplemental claims lack facial plausibility.

The plausibility assessment "operates in conjunction with the substantive law" that gives rise to the claims asserted. *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012). In the proposed supplemental complaint, Plaintiff asserts claims of (1) abuse of process, (2) appropriation of Plaintiff's likeness, and (3) IIED, as well as conspiracy claims attendant to each of the three claims.

### 1. Abuse of Process Claim

Under Maine law, an abuse of process claim "'covers the allegedly improper use of individual legal procedures after a suit has been filed properly. Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment.'" *Pepperell Tr. Co. v. Mt. Heir Fin. Corp.*, 708 A.2d 651, 655 n.8 (Me. 1998) (quoting *Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995)).[2] "The elements necessary to sustain an abuse of process claim are (1) a use of the process in a manner not proper in the regular conduct of the proceedings and (2) the existence of an ulterior motive." *Leighton v. Lowenberg*, 290 A.3d 68, 73 (Me. 2023) (quotation marks omitted). The first element—an abusive act—requires some demonstration of an "improper use of process 'for an immediate purpose other than that for which it was designed and intended[.]'" *Simon*, 71 F.3d at 15 (quoting

[2] As with the litigation privilege, the parties appear to agree that Maine law governs the claims, and it is reasonable for the Court to accept that agreement in assessing Plaintiff's proposed amendment.

Restatement (Second) of Torts § 682, at 475 (1977)). The filing of suit or other "regular" use of process cannot by itself satisfy the element of an abusive act "even if the decision to sue [or otherwise use process] was influenced by a wrongful motive, purpose or intent." *Id.* at 16.

Plaintiff's proposed abuse of process claim is based on defense counsel's discovery request, through an interrogatory, for the birth dates and address(es) of Plaintiff's children. Plaintiff alleges that, by propounding the interrogatory, counsel "attempted to intimidate and coerce" him into dismissing this suit. (Proposed First Amended Complaint ¶¶ 48, 50.) Even if the interrogatory qualified as a use of "process,"[3] its use, as alleged in the proposed supplemental complaint, would not satisfy the element of an abusive act because it is based on the "regular" use of a discovery tool—a request to obtain information about the other persons who, according to Plaintiff, were present at the time of the self-checkout transaction that gave rise to this action. Plaintiff has not asserted any non-conclusory allegations that would support a finding that the interrogatory was propounded solely, or even principally, to achieve an improper purpose. *See Simon*, 71 F.3d at 16 (explaining that it may not be presumed that process was employed "solely to achieve a collateral

[3] Whether discovery requests qualify as "process" for purposes of the abuse of process tort is not entirely clear. Although Maine Supreme Judicial Court, sitting as the Law Court, has referred to "discovery" as "process" in this context, *see, e.g., Advanced Constr. Corp. v. Pilecki*, 901 A.2d 189, 197 (Me. 2006), the Law Court has more recently signaled that "process" refers to the use of judicial instruments, and that abuse of discovery is a matter more appropriately remedied through discovery procedures, including sanctions. *See Leighton*, 290 A.3d at 74 (defining "process" more narrowly, by reference to the Restatement (Third) of Torts: Liability for Economic Harm § 26 (Am. Law Inst. 2020), to mean orders or other instruments by which courts assert their authority and concluding that refusal to properly respond to discovery requests could not support abuse of process claim).

objective based on evidence of motive alone"); *see also OfficeMax Inc. v. Sousa*, 773 F. Supp. 2d 190, 241 (D. Me. 2011) ("[T]he abuse of process plaintiff must show a 'specific link' between the [use of process] and an impermissible, collateral purpose."). In sum, Plaintiff's proposed abuse of process claim would be futile.

**2. Invasion of Privacy Claim**

Maine law recognizes the tort of invasion of privacy by appropriation of likeness and has embraced the formulation set forth in the Restatement (Second) of Torts. *Simpson v. Cent. Me. Motors, Inc.*, 669 A.2d 1324, 1326 (Me. 1996). Under that formulation, "'[o]ne who appropriates to his own use or benefit the . . . likeness of another is subject to liability to the other for invasion of his privacy.'" *Id.* (quoting Restatement (Second) of Torts § 652C (1977)). "The protection afforded by the law to this [privacy] right relates to ordinary sensibilities" and does not extend to "supersensitiveness." *Nelson v. Me. Times*, 373 A.2d 1221, 1224 (Me. 1977) (quotation marks omitted). "Additionally, the appropriation must benefit the tortfeasor." *Id.* An incidental use of the plaintiff's likeness is not actionable under § 652C, as the Law Court observed in *Nelson*. *See* Restatement (Second) of Torts § 652C cmt. d. The right to privacy is invaded "only when . . . publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with" the plaintiff's likeness. *Id.*

Plaintiff's invasion of privacy claim is based on allegations that John Doe provided defense counsel with a "fabricated video" of the self-checkout transaction, which video recording depicted Plaintiff's likeness without his consent, and that Defendant Target and defense counsel improperly used the recording in this case. Plaintiff has failed to state a

plausible claim for invasion of privacy based on appropriation of likeness in the absence of any allegations that Plaintiff's likeness was published to others. Plaintiff has also failed to allege facts that would support a finding that John Doe, Defendant Target, or defense counsel appropriated his likeness for the purpose of taking advantage of Plaintiff's reputation, prestige or other value associated with his likeness. *See id.* Accordingly, Plaintiff's proposed amendment to allege an invasion of privacy claim would be futile.

### 3. IIED Claim

In Maine, a plaintiff asserting an IIED claim must establish that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain that such distress would result from the defendant's conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as outrageous, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Vogt v. Churchill*, 679 A.2d 522, 524 (Me. 1996) (quotation marks and alterations omitted).

Plaintiff's IIED claim is based on allegations that John Doe, defense counsel, and Defendant Target served a "fabricated video" on Plaintiff in discovery "depicting events that never occurred utilizing Plaintiff's toddler children's likeness without Plaintiff's consent" in an effort to coerce Plaintiff into admitting false statements about the case, causing him to suffer severe mental suffering. (Proposed Amended Complaint ¶¶ 58-61.) The allegations do not state a plausible claim for IIED under Maine law. The tort of IIED is not "available to a party outraged by the filing of a lawsuit against it." *Davis v. Currier*, 704 A.2d 1207, 1209 (Me. 1997). The tort "is not designed to protect plaintiffs from the

vicissitudes of the litigation process." *F.D.I.C. v. S. Prawer & Co.*, 829 F. Supp. 439, 449 (D. Me. 1993). It necessarily follows that a person's reaction to information exchanged in discovery, including the video recording in this case, cannot support such a claim. *See Riley v. Harr*, 292 F.3d 282, 299 (1st Cir. 2002) (concluding that defendant's critical evaluation of plaintiff's testimony, which expressed in various ways that plaintiff had not testified truthfully, was not extreme and outrageous). Moreover, Plaintiff has failed to allege facts that would support a reasonable inference that he suffered mental distress of the severity necessary to sustain an IIED claim. The law does not generally permit recovery for damages related to the stress of litigation, *Capital City Renewables, Inc. v. Piel*, 335 A.3d 588, 597 (Me. 2025), and those are the only damages that Plaintiff has alleged. The proposed amendment to assert an IIED claim, therefore, would be futile.

**4. Conspiracy Claims**

Along with the abuse of process, invasion of privacy, and IIED claims, Plaintiff attempts to assert corresponding claims of conspiracy. Because the proposed supplemental complaint fails to state plausible underlying tort claims, the corresponding conspiracy claims also fail. *See Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 708 A.2d 283, 286 (Me. 1998) ("[A]bsent the actual commission of some independently recognized tort, a claim for civil liability for conspiracy fails.").

**C. Undue Prejudice**

Even if the litigation privilege did not bar the supplemental claims, and even if the claims were otherwise plausible, the prejudice to Defendant militates against the amendment. The case has been pending for nearly a year, and defense counsel has been

representing Defendant Target throughout. If permitted, the amendment could generate issues that could delay the conclusion of the case and potentially compromise Defendant Target's legal representation in this case. *See Melendez v. Univ. of N.H.*, No. 23-cv-00172-SM-TSM, 2024 WL 3522177, at *12 (D.N.H. July 2, 2024) (reaching this same conclusion when Plaintiff used similar strategy in a different case).[4]

## CONCLUSION

Following a review of the record and after consideration of the parties' arguments, for the reasons explained above, I recommend that the Court deny Plaintiff's motion to supplement his complaint.

## NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.
>
> Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 3rd day of November, 2026.

[4] Defendant Target and defense counsel also contend that leave should be denied based on Plaintiff's undue delay in attempting to supplement, and they contend that the claims are barred by the Uniform Public Expression Protection Act (UPEPA), 14 M.R.S. §§ 731-742. Because I conclude that leave should be denied for other reasons, I do not address the arguments.